UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SM ENERGY COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 11-cv-3028 |
| | § | |
| SMACKCO, LTD. and COASTAL | § | |
| STATES EXPLORATION, INC., | § | |
| | § | |
| Defendants | § | |
| | § | |

## MEMORANDUM AND ORDER

SM Energy Company ("Plaintiff") brought this suit on sworn account and breach of contract case against Smackco, Ltd. and its general partner, Coastal States Exploration, Inc. (collectively, "Defendants"). Pending before the court are Plaintiff's Motion for Summary Judgment (Doc. No. 13) and Motion for Partial Summary Judgment (Doc. No. 19), and Defendants' Cross-Motion for Partial Summary Judgment (Doc. No. 15). After considering the Motions, all responses and replies thereto, and the applicable law, the Court concludes that Plaintiff's Motion for Summary Judgment (Doc. No. 13) must be GRANTED in part; Defendants' Cross-Motion for Partial Summary Judgment (Doc. No. 15) must be DENIED; and Plaintiff's Motion for Partial Summary Judgment (Doc. No. 19) must be DENIED as moot.

## I.    Background

### A.    The Undisputed Facts

The following facts are undisputed. Plaintiff operated an offshore well, the Vermilion 281. (First Am. Complaint ("Compl.") ¶ 7 (Doc. No. 12).) Defendant Smackco was a 5% working interest owner in the Vermilion 281 (*id.* ¶ 7); Defendant Coastal States is Smackco's

general partner (*id.* ¶ 12). Under the parties' Offshore Operating Agreement ("OOA"), Plaintiff

paid all costs related to the Vermilion 281, and each working interest owner reimbursed Plaintiff

for those costs according to its proportional interest. (*Id.* ¶ 8; OOA § 8.1 (Doc. No. 13-2).)

The OOA obligated Plaintiff to "obtain the insurance provided in Exhibit 'B'" to the

OOA. (OOA § 16.1.) Exhibit B required the following insurance coverage under the heading

"Extra Expense Liability:"

> Operator shall carry Operator's Extra Expense coverage including control
> of well, seepage, pollution and contamination coverage, cleanup and/or
> containment coverage, redrilling and/or restoring, and care, custody and
> control. Limit of liability shall be $50 million with coverage subject to a
> deductible of $100,000 (except care, custody and control which is limited
> to a liability of $500,000 with a $25,000 deductible).

(OOA Ex. B. art. IV.)

Plaintiff contracted with Lockton Companies, LLC—representing a group of insurance

underwriters—to provide OEE insurance for the Vermilion 281 (the "OEE Policy"). (Doc. No.

13-11.)[1] The OEE Policy covered control of well; redrill/extra expense-drilling wells; and

seepage and pollution, cleanup and containment. (*Id.* at A-180.) It also carried a number of

endorsements, including care, custody and control. (*Id.* at A-181.) It did not cover—or carry an

endorsement for—"resultant plugging and abandonment" or "resultant P&A," which refers to

costs associated with plugging and abandoning a well following physical damage to the platform.

(*Id.* at A-180 to A-188; Doc. No. 15, at 4, 10; Doc. No. 17, at ¶ 6.) The OEE Policy was limited

to $50 million of coverage for any one occurrence. (*Id.* at A-183.) In the event of a named

windstorm, however, the coverage was limited to $25 million. (*Id.*)

---

[1] The Court cites to the "Energy Package Policy" attached as Exhibit J to Plaintiff's Motion for
Summary Judgment. Exhibit K to the motion is also a copy of the "Energy Package Policy."
Plaintiff represents that the insurance policies are identical. (Doc. No. 13, at 3 n.3.) The Court
will cite to Exhibit J for consistency and clarity.

In 2008, Hurricane Ike damaged the Vermilion 281 so badly that Plaintiff was forced to plug and abandon the well. (Compl. ¶ 9.) Plaintiff filed a claim under the OEE Policy for damages and expenses related to the hurricane. (Doc. No. 16-8; Doc. No. 16-9; Doc. No. 16-10.) The claim was settled on September 16, 2009.[2] (Doc. No. 16-6.) Plaintiff and underwriters on the OEE Policy agreed to a total claim on the OEE Policy of $24,861,997. (*Id*. at 2.) Because the other working interest owner in the Vermilion 281 had self-insured, Plaintiff was only entitled to payment on approximately 85% of the claim, or $19,065,342.[3] (*Id*.) After a $1,750,000 windstorm deductible was subtracted, and $500,000 of "Errors and Omissions Claims" were added, Plaintiff received a final payment on the OEE Policy of $17,815,000. (*Id*. at 2.)

Because the OEE Policy did not cover "resultant P&A," none of the costs related to the plugging and abandonment of the Vermilion 281 following Hurricane Ike was included in the above insurance adjustment and final settlement. (Doc. No. 16-6, at 2; Doc. No. 15, at 4.) Between July 31, 2009 and July 28, 2011, Plaintiff invoiced Smackco for its alleged share of Plaintiff's operating services for the Vermilion 281: Joint Interest Billing ("JIB") charges of $711,319.52.[4] (Compl. ¶ 11; Doc. No. 13-3, at A-78 to A-79; Doc. No. 13-4, at A-80 to A-118.) These JIB charges included costs related to the plugging and abandonment of the wells following

---

[2] Defendants concede that Plaintiff properly adjusted its claim with Lockton Companies, LLC and that the final settlement amount is correct and reasonable pursuant to the OEE Policy. (Doc. No. 17-3, at A-87 to A-88; Doc. No. 22, at 9.)

[3] Plaintiff and Smackco had a combined 85% interest in the Vermilion 281. (Doc. No. 16-5, at 4; Doc. No. 17, at 3 n.2.)

[4] Between July 28, 2010 and June 28, 2011, Plaintiff also invoiced Smackco for interest on past due JIB charges. (Doc. No. 13-3, at A-78 to A-79; Doc. 13-4, at A-119 to A-130.) The total interest invoiced as of April 30, 2012, is $91,901.68. (Compl. ¶ 11, Doc. No. 13-3, at A-79.) Therefore, Plaintiff seeks a total of $803,221.20 in this lawsuit: $711,319.52 in past due JIB charges and $91,901.68 in interest. (Compl. ¶ 11.)

Hurricane Ike. (*E.g.*, Doc. No. 13-4, at A-86, A-88.) Smackco refused to pay the charges on the grounds that Plaintiff underinsured the Vermilion 281. (Doc. No. 13-7, at A-157.)

### B.   The Parties' Legal Claims and Defenses

Plaintiff brings suit on a sworn account (Compl. ¶¶ 14-16) and a breach of contract claim under the OOA (*id.* ¶¶ 17-19.) Plaintiff claims that Smackco's unpaid JIB and interest charges for operating services performed on the Vermilion 281—including the plugging and abandonment operations undertaken after Hurricane Ike—are proper, payable, and owed. (*Id.* ¶¶ 15, 18.) Plaintiff alleges that Coastal States is equally liable for the charges due to its status as a general partner in Smackco. (*Id.* ¶¶ 16, 19.)

In response, Defendants assert that Smackco's contractual obligation to pay was excused by Plaintiff's prior breaches of the OOA. Specifically, Defendants allege that Plaintiff violated the following provisions of the OOA: (1) section 16.1 requiring Plaintiff to procure $50 million of "Operator's Extra Expense" ("OEE") insurance (Doc. No. 14, at ¶ 33); (2) paragraph VI of Exhibit B to the OOA requiring Plaintiff to inform working interest owners if it is unable to purchase the insurance required under the OOA (*id.* at ¶ 34); and (3) section 5.2 requiring Plaintiff to operate the Vermilion 281 as a reasonable and prudent operator would (*id.* at ¶ 35). Smackco also claims that Plaintiff is equitably stopped from recovering on its claims because it falsely represented or concealed the state of the insurance coverage on the Vermilion 281. (*Id.* at ¶ 36.)

Defendants' criticisms of the OEE insurance procured by Plaintiff are twofold. First, Defendants claim that a $25 million limit on coverage for damage occasioned by a named windstorm was too low. (Doc. No. 15, at 8-10.) Second, Defendants claim that the OEE should

have covered "resultant P&A." (*Id*. at 10.) Both of these criticisms are grounded in the risk posed

by hurricanes to an offshore property in the Gulf of Mexico. (*Id*. at 11.)

## II.   Competing Motions for Summary Judgment

Not surprisingly, given that the facts in this case are essentially undisputed, both sides

move for summary judgment. Plaintiff moves for summary judgment on both of its causes of

action, arguing that it has established its right to recovery as a matter of law *and* that Defendants'

defenses fail to raise a genuine issue of material fact. (Doc. No. 13, at ¶¶ 2, 23.) Separately,

Plaintiff moves for partial summary judgment on Defendants' so-called "negligence" defense,

which states that Plaintiff is barred from recovery because it failed to operate the Vermilion 281

as a reasonable and prudent operator would have. (Doc. No. 19, at ¶ 5.)

In response to Plaintiff's motion for summary judgment on its affirmative claims,

Defendants cross-move for summary judgment on Plaintiff's suit on a sworn account.  (Doc. No.

15, at 5-6.) Defendants do not move for summary judgment on Plaintiff's second claim for

breach of contract. Unlike Plaintiff, Defendants believe that there exist fact questions to be

determined at trial on Plaintiff's contract claim. (*Id*. at 12.)

## III.   Summary Judgment Standard

A motion for summary judgment requires the Court to determine whether the moving

party is entitled to judgment as a matter of law based on the evidence thus far presented. FED. R.

CIV. P. 56(a). Summary judgment is proper "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." *Kee v. City of Rowlett*, 247 F.3d 206, 210 (5th Cir. 2001) (quotations omitted). A

genuine issue of material fact exists if a reasonable jury could enter a verdict for the non-moving party. *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000).

The showing required on summary judgment depends on whether the moving party bears the burden of proof at trial. If the moving party bears the burden of proof at trial—as Plaintiff does on its two claims for relief, and as Defendants do on their affirmative defenses—it must "establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). If the moving party does not bear the burden of proof at trial, however, it may succeed on summary judgment simply by "disproving the existence of any essential element of the opposing party's claim or affirmative defense." *Id.*

The Court views all evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Crawford*, 234 F.3d at 902. The Court may not make credibility determinations or weigh the evidence. *Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428, 436 (5th Cir. 2005). Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. FED. R. CIV. P. 56(c); *see, e.g., Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1975 (5th Cir. 1994) (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt as to the material facts'") (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

Interpretation of an unambiguous contract is a legal issue that may be decided on summary judgment. *See Greenwood 950, L.L.C. v. Chesapeake Louisiana, L.P.*, 683 F.3d 666, 668 (5th Cir. 2012). A contract is ambiguous when "its 'written terms are susceptible to more than one interpretation,' when 'there is uncertainty as to its provisions,' or when 'the parties'

intent cannot be ascertained from the language used.'" *Id.* (quoting *Sequoia Venture No. 2, Ltd.* *v. Cassidy*, 968 So.2d 806, 809 (La. Ct. App. 2007)). An ambiguous contract presents a question of fact regarding the parties' intent and must be interpreted "in light of the nature of the contract, equity, usages, the conduct of the parties before and after the formation of the contract, and of other contracts of a like nature between the same parties." LA. CIV. CODE art. 2053. "When the words of a contract are clear and explicit and lead to no absurd consequences," however, the contract is unambiguous and may be construed as a matter of law. LA. CIV. CODE art. 2046. "[N]ontechnical words in a contract must be given their generally prevailing meaning, and each contract provision must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." *Greenwood 950*, 683 F.3d at 669.

## IV.   ANALYSIS

In deciding the pending motions for summary judgment, the Court applies Louisiana law. The OOA states that it shall be "interpreted according to the laws of the State of Texas." (OOA § 21.1.) But the Fifth Circuit has held that the statutory choice-of-law provision in the Outer Continental Shelf Lands Act ("OCSLA") trumps private choice-of-law agreements when a contractual dispute "arises" on the Outer Continental Shelf ("OCS"). *Union Texas Petroleum Corp. v. PLT Engineering, Inc.*, 895 F.2d 1043, 1050 (5th Cir. 1990); *Scott v. DelMar Offshore Services, Inc.*, 943 F.Supp. 764, 768 (S.D. Tex. 1996). A contractual dispute "arises" on the OCS "if a majority of the performance called for under the contract is to be performed on stationary platforms or other OCSLA situses." *Grand Isle Shipyard, Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 787 (5th Cir. 2009). It is undisputed that the OOA was predominantly performed on a stationary platform on the OCS, adjacent to the state of Louisiana. (OOA Ex. A.) Therefore,

pursuant to the OCSLA choice-of-law provision—found in 43 U.S.C. § 1333(a)(2)(A)—the Court will apply Louisiana law to Plaintiff's claims.[5]

### A. Plaintiff may pursue suit on an open account in federal court.

In their Cross-Motion for Partial Summary Judgment, Defendants urge the Court to grant summary judgment on Plaintiff's first claim for relief—suit on a sworn account—because it is a procedural mechanism under Texas law. This argument has two components. First, Defendants argue that Texas law does not apply to this case, justifying a grant of summary judgment. (Doc. No. 15, at 6.) Alternatively, Defendants argue that, even if Texas's *substantive* law applies in this federal lawsuit, its *procedural* law does not. (*Id*.) In response, Plaintiff does not address the merits of the choice of law argument, arguing that it is irrelevant as the claim for relief pled exists under both Texas and Louisiana law as a *substantive* cause of action available in federal court. (Doc. No. 17, at ¶¶ 14-15.)

Plaintiff is correct. Suit on an open account is a common law cause of action recognized in both Texas and Louisiana. *See Sunshine Traders of El Paso, Inc. v. Dolgencorp, Inc.*, 219 Fed. Appx. 375, 377 (5th Cir. 2007); *Robbins Hardwood Flooring, Inc. v. Bolick Distributors, Corp.*, Civ. Act. No. 02-1124, 2003 WL 21730142, at *2 (N.D. Tex. Mar. 18, 2003). Whether brought under Texas or Louisiana state law, it is a substantive claim for relief frequently pursued in federal court. *See, e.g., Extreme Energy Services, LLC v. Gator Energy Operating, LLC*, Civ. Act. No. 10-1487, 2012 WL 1833922, at *2 (W.D. La. May 17, 2012); *Robbins Hardwood*, 2003 WL 21730142, at *2; *Rauch-Milliken Int'l, Inc. v. Delta Consolidated Industries, Inc.*, Civ. Act. No. 92-1693, 1993 WL 500797, at *10 (E.D. La. Nov. 24, 1993).

---

[5] Specifically, the Court finds that Louisiana law applies to Plaintiff's claims under the three-part test set forth in *PLT Engineering*: (1) the controversy arises on an OCSLA situs; (2) federal maritime law is inapplicable; and (3) Louisiana law governing contracts is not inconsistent with federal law. *See PLT Engineering*, 895 F.2d at 1047.

Defendants suggest that summary judgment should be granted simply because Plaintiff evinced an intention to proceed under Texas state law, rather than Louisiana. It is true that the terminology for the cause of action differs between the two states. In Texas, the claim is commonly known as "suit on a *sworn* account" due to the procedure set forth in Rule 185 of the Texas Rules of Civil Procedure, by which a plaintiff establishes a *prima facie* right of recovery simply by verifying his complaint. *Rizk v. Financial Guardian Ins. Agency, Inc.*, 584 S.W.2d 860, 862 (Tex. 1979). Thus, by describing its first claim for relief as suit on a "sworn" account, Plaintiff indicated a belief that Texas law controlled pursuant to the choice of law provision in the OOA. The fact that Louisiana law governs due to the OCSLA choice-of-law statute, however, does not require summary judgment in favor of Defendants. All that federal procedure requires of Plaintiff's complaint is fair notice of the claim asserted against Defendants. FED. R. CIV. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"); *Conley v. Gibson*, 355 U.S. 41, 47-48 (1957). This was accomplished. Importantly, the elements of suit on an open account under Louisiana law are the same as elements of suit on a sworn account under Texas law.[6] As Defendants do not raise any additional arguments for summary judgment on this claim, their cross-motion for partial summary judgment must be denied.

---

[6] The Texas cause of action has one additional element to the Louisiana cause of action:

> [A]ll that is required under Louisiana law is 1) sale and delivery of a good or service on credit; and 2) the amount remains unpaid. These elements are significantly similar under Texas law. Under Texas law, the elements of an action on a sworn account are: (1) a sale and delivery of goods and services; (2) the charges on the account are just, i.e., the prices are charged in accordance with an agreement or, in the absence of an agreement, are the usual, customary and reasonable prices for that good or service; and, (3) the amount remains unpaid.

*Robbins Hardwood*, 2003 WL 21730142, at *2.

9

**B.      Plaintiff's evidence demonstrates a *prima facie* right to relief on both of its claims.**

**1.      Suit on an open account**

Under Louisiana's Civil Code, an open account is defined as "any account for which a part or all of the balance is past due." LA. REV. STAT. § 9:2781(D). Accordingly, the elements of suit on an open account are simple and straightforward. A plaintiff need only establish: (1) "sale and delivery of a good or service on credit" and (2) "the amount remains unpaid." *Robbins Hardwood*, 2003 WL 21730142, at *2.

Plaintiff's summary judgment evidence includes accounts receivable summaries (Doc. No. 13-3); invoices to Smackco totaling $711,319.52 in services performed on the Vermilion 281 and $91,901.68 in interest (Doc. No. 13-4); and correspondence from Smackco explicitly refusing to pay the invoices (Doc. No. 13-7). The documents are authenticated by Chad Mulliniks, Assistant Controller of Plaintiff SM Energy Company, who is an individual with personal knowledge of the accounts receivable and Smackco's failure to pay. (Doc. No. 13-5.) This evidence is sufficient to establish both elements of an open account under Louisiana law. FED. R. CIV. P. 56(c)(1) (party asserting that a fact cannot be disputed must support the assertion with citations to the record).

Defendants do not dispute the accuracy of the accounts, or its failure to pay, but suggests that there is a fact issue "as to whether the prices charged were just and true in accordance with the terms of the OOA" because "SM Energy failed to procure the insurance required under the OOA." (Doc. No. 15, at 7.) The merits of this defense are addressed in Section III(C), below.

### 2.      Breach of contract

The elements of breach of contract under Louisiana law are: "(1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee." *Favrot v. Favrot*, 68 So.3d 1099, 1108-09 (La. Ct. App. 2011). The first element—Smackco's obligation to reimburse Plaintiff for its operating costs—is established by section 8.1 of the OOA. The remaining elements of Plaintiff's contract claim are established by the same summary judgment evidence supporting its suit on an open account.

Defendants do not dispute Smackco's contractual obligation to reimburse Plaintiff for its operating services. Defendants contend that fact issues exist regarding whether Plaintiff committed a "prior material breach" of the OOA, thereby excusing Smackco's payment obligations, or whether Plaintiff is estopped from recovering payment under the OOA due to its misrepresentations or fraudulent concealment of material facts. (Doc. No. 15, at 8-12.) The merits of these defenses are addressed in Section III(C), below.

### C.      None of Defendants' defenses raises a genuine issue of material fact to be tried to a jury.

Defendants claim that Smackco is excused from its obligations under the OOA—and necessarily from any "account" based in that contract—because Plaintiff committed one or more prior material breaches of the OOA. Defendants identify three separate contractual provisions allegedly breached by Plaintiff:

- Section 16.1 and Exhibit B, article IV, which obligates Plaintiff to insure the Vermilion 281 for Extra Expense Liability in the amount agreed by the parties;

- Exhibit B, article VI, which obligates Plaintiff to inform Smackco and the other working interest owners when it is unable to insure the Vermilion 281 in the amount agreed by the parties; and

- Section 5.2, which obligates Plaintiff to operate the Vermilion 281 as a reasonable and prudent operator (and, according to Defendants, to insure the Vermilion 281 as a reasonable and prudent operator).

All of these alleged material breaches are grounded in two fundamental complaints regarding the OEE Policy procured by Plaintiff. The first is that the $25 million named windstorm limit in the policy was in violation of the OOA; unreasonable and imprudent; or both. (Doc. No. 15, at 8-9, 11.) The second is that failure to cover "resultant P&A" in the policy's terms was in violation of the OOA; unreasonable and imprudent; or both. (*Id*. at 10-11.)

### 1. Plaintiff complied with the insurance requirements of the OOA in all material respects.

The first two of the above defenses rely upon a showing that Plaintiff failed to procure the proper amount and type of insurance required under the OOA. They rise and fall together as a matter of logic. Plaintiff's obligation to inform Smackco that it has been unable to procure the required insurance is only triggered if Plaintiff in fact did not procure the required insurance. Put another way, if Plaintiff did *not* breach section 16.1 and article IV of Exhibit B—because the OEE Policy met the requirements of the contract—then it could not have breached article VI of Exhibit B. As a result of this interdependence, it is only necessary to evaluate whether a fact issue exists regarding the first alleged breach. The result of this analysis will determine whether Plaintiff has met its burden to disprove both defenses.

Plaintiff's compliance with section 16.1 and article IV can be determined as a matter of law. The terms of the OOA are not in dispute. The terms of the OEE Policy are not in dispute. The only dispute between the parties is whether the OEE Policy actually met the requirements of the contract. This is a quintessential question of law that may be decided on summary judgment.

The Court finds the relevant provisions of the OOA to be unambiguous. *See Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 764 (La. 1994) ("The

determination of whether a contract is clear or ambiguous is a question of law."). Because the relevant provisions of the OOA are unambiguous, they may not be altered, amended, or added to by evidence outside the four corners of the parties' written agreement. *See* LA. CIV. CODE art. 2046 ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent."); *see also Brown v. Drillers, Inc.*, 630 So.2d 741, 748 (La. 1994) ("The meaning and intent of the parties to a written agreement . . . is ordinarily determined from the four corners of the instrument, and extrinsic (parol) evidence is inadmissible either to explain or to contradict the terms of the instrument.").

Section 16.1 of the OOA states that Plaintiff "shall obtain the insurance provided in Exhibit 'B'" to the OOA. (OOA § 16.1.) Exhibit B requires the following insurance under the heading "Extra Expense Liability":

> Unless Operator is notified by a Non-Operator that such Non-Operator elects to furnish its own insurance, Operator shall carry for the benefit of all participants the Extra Expense Liability coverage set forth below. Such notice to Operator shall include a certificate of such Non-Operator's insurance carrier evidencing at least the minimum coverage described below.
>
> Operator shall carry Operator's Extra Expense coverage including control of well, seepage, pollution and contamination coverage, cleanup and/or containment coverage, redrilling and/or restoring, and care, custody and control. Limit of liability shall be $50 million with coverage subject to a deductible of $100,000 (except care, custody and control which is limited to a liability of $500,000 with a $25,000 deductible).

(OOA Ex. B. art. IV.) The contract required Plaintiff to obtain $50 million worth of OEE insurance. The *only* deviation expressly allowed from the $50 million requirement was in the case of the "care, custody and control" endorsement, on which Plaintiff was permitted to have a $500,000 policy limit. In all other instances, the contract required a minimum of $50 million coverage. This minimum requirement is not ambiguous and can be construed as a matter of law.

The contract also stipulated various coverages and/or endorsements required on the OEE insurance. These included "control of well, seepage, pollution and contamination coverage, cleanup and/or containment coverage, redrilling and/or restoring, and care, custody and control." (OOA Ex. B, art. IV.) These enumerated endorsements defined the *minimum coverage* for the OEE insurance. *See* La. Civ. Code art. 2051 ("Although a contract is worded in general terms, it must be interpreted to cover only those things it appears the parties intended to include."). Indeed, the paragraph immediately preceding stated that working interest owners could opt out of participating in Plaintiff's OEE Policy only by submitting proof of "at least the *minimum coverage* described below." (OOA Ex. B, art. IV (emphasis added).) Any coverage and/or endorsements not listed in article IV were simply not required, either by Plaintiff or by working interest owners wishing to opt out of Plaintiff's policy. Again, the minimum coverage required on the OEE insurance is not ambiguous and can be construed as a matter of law.

Defendants maintain that Plaintiff did not meet the requirements of Exhibit B, Article IV because the OEE Policy: (1) contained a $25 million sublimit for named windstorm damage and (2) did not cover "resultant P&A." Only the first of these arguments is sustainable in light of the unambiguous wording of the contract. Defendants' latter argument simply cannot be reconciled with the plain wording of Exhibit B. "Resultant P&A" is not included in the enumerated endorsements required on the OEE coverage. Because "resultant P&A" is not expressly listed— and other specific endorsements are—Exhibit B did not require a "resultant P&A" to be covered by the OEE Policy, and Plaintiff's "failure" to insure for "resultant P&A" is not breach.[7]

---

[7] Defendants may have been able to raise a fact issue on this point by introducing evidence that "resultant P&A" is understood in the industry to be included in OEE insurance. *See* La. Civ. Code art. 2047 ("Words of art and technical terms must be given their technical meaning when the contract involves a technical matter."). Defendants failed, however, to designate an expert in insurance coverage. Although Defendants tendered the testimony of Smackco employee Roger

On the other hand, Defendants are correct that Exhibit B required OEE insurance in the amount of $50 million.[8] Thus, as a matter of law, Plaintiff failed to procure the insurance required by the contract because of the $25 million named windstorm limit.

It is not enough for Defendants to show a breach of OOA, however. The breach must "substantially impair" Smackco's interest under the OOA in order to justify its refusal to pay costs. *See* LA. CIV. CODE art. 2014 ("A contract may not be dissolved when the obligor has rendered a substantial part of the performance and the part not rendered does not substantially impair the interest of the obligee."); *see also Ouachita Nat'l Bank in Monroe v. Gulf States Land & Development, Inc.*, 579 So.2d 1115, 1121 (La. Ct. App. 1991) ("When one party to a contract substantially breaches it the other party has a defense and an excuse for non-performance. A contract may not be dissolved when the obligor has rendered a substantial part of the performance and the part not rendered does not substantially impair the interest of the obligee.") (citations omitted). Here, the "part not rendered" by Plaintiff—an additional $25 million coverage in the event of a named windstorm—did not "substantially impair the interest" of Smackco. It is undisputed that the total value of the claim submitted on the OEE Policy was only $24,861,997—*less* than the $25 million limit. (Doc. No. 16-6, at 2.) There is no question—and Defendants have conceded—that this amount was correct and proper. (Doc. No. 17-3, at A-87 to A-88; Doc. No. 22, at 9.) Therefore, Defendants have submitted no evidence suggesting that the

Chapman—expressing his opinion that OEE should include "resultant P&A"—Chapman does not have the expertise in insurance to testify regarding the "technical meaning" of OEE. (Minute Entry, Sept. 20, 2012.) Although Chapman is also a fact witness, his testimony regarding what should have been covered under the OEE Policy is not sufficient to change the unambiguous terms of the OOA. *See* LA. CIV. CODE art. 2046 ("When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent.").

[8] Exhibit B permits only one exception to the $50 million limit –specifically, the "care, custody and control" endorsement—which is not at issue in this case.

$25 million named windstorm limit caused it harm, or that the costs billed to it would be any different if Plaintiff had complied with the contract's $50 million coverage requirement. Plaintiff's breach simply is not material to the present dispute and does not vitiate Smackco's obligation under the OOA to reimburse Plaintiff for its operating costs.[9]

In all *material* respects, the OEE Policy procured by Plaintiff complied with Exhibit B to the OOA. Defendants have failed to raise a genuine issue of material fact to the contrary.

### 2. The "negligence" defense is redundant to Defendants' other contractual defenses.

Exhibit B to the OOA specified the types and amounts of insurance that Plaintiff would procure on the Vermilion 281. As described above, Plaintiff complied with Exhibit B in all material respects when it procured the OEE Policy. This finding is fatal to Defendants' final contractual defense: that Plaintiff failed to act as a reasonable and prudent operator as required by section 5.2 of the OOA.

Section 5.2 "must be interpreted in light of the other provisions [of the OOA] so that [it] is given the meaning suggested by the contract as a whole." La. Civ. Code art. 2050. In Exhibit B, the parties negotiated and agreed on a level of minimum insurance to be carried on the Vermilion 281. To interpret Section 5.2 as potentially imposing an obligation on Plaintiff to insure the rig *beyond* what was contemplated in Exhibit B would lead to an absurd result. In essence, this reading of Section 5.2 would suggest that, in Exhibit B, the parties contracted for an amount of insurance that was *un*reasonable and *im*prudent. This cannot be correct. Because Plaintiff complied with Exhibit B in all material respects, Defendants' third "negligence" defense

---

[9] Whether a pre-existing breach substantially impaired the rights of the non-breaching party can present a fact question in some cases. *See, e.g., Ouachita Nat'l*, 579 So.2d at 1122. In this instance, however, there is no evidence of any impairment, and thus no evidence to support a finding of substantial impairment.

also fails as a matter of law.[10]

### 3.    Defendants have not presented summary judgment evidence that would permit a finding in their favor on equitable estoppel.

Defendants raise a final affirmative defense: that Plaintiff is estopped from recovering on its claims because it falsely represented, or fraudulently concealed, the insufficient insurance coverage on the Vermilion 281. (Doc. No. 14, at ¶ 36.) The elements of equitable estoppel are: "(1) a representation by conduct or work; (2) justifiable reliance thereon; and (3) a change of position to one's detriment because of the reliance." *MB Industries, LLC v. CNA Ins. Co.*, 74 So.3d 1173, 1180 (La. 2011). "Strictly speaking, equitable estoppel applies only where a party has made false or misleading representations of fact and the other party justifiably relied on the representation." *Id.*

Because Defendants bear the burden of proof on equitable estoppel at trial, failure to adduce supporting evidence on any one of the three elements is fatal to the defense. *See Fontenot*, 780 F.2d at 1194. In this case, Defendants have not presented any evidence suggesting that Plaintiff *misrepresented* its insurance coverage. Defendants cite deposition testimony from their employees Paul Owen and Roger Chapman stating that Plaintiff never informed Smackco that the OEE Policy had a $25 million named windstorm sublimit or that it did not cover resultant plugging and abandonment costs. (Doc. No. 16-18, at 4, 8; Doc. No. 16-19, at 8.) Defendants also rely on a January 13, 2010 letter from Plaintiff stating that the $25 million named windstorm sublimit was all that the market offered in 2008. (Doc. No. 16-16, at 1.) This evidence does not support a finding that Plaintiff made any representation about the OEE Policy

---

[10] Plaintiff raises several other legal and factual challenges to the "negligence" defense in its motion for partial summary judgment (Doc. No. 19). Because the Court finds that the "negligence" defense fails for the reason cited in the text, Plaintiff's motion for partial summary judgment shall be denied as moot.

prior to Hurricane Ike, much less a false one.

It is true that estoppel may be premised on "'concealment of material facts,'" rather than affirmative misrepresentation. *See Brown v. Parish*, 1 La. App. 246, 250 (La. Ct. App. 1925) (citation omitted). However, because equitable estoppel is "not favored in law," mere silence will not estop Plaintiff unless Defendants were "'destitute of knowledge of the real facts'" and had no "'convenient or ready means of acquiring such knowledge.'" *Id*. (citation omitted); *see also Harvey v. Richard*, 7 So. 2d 674, 677 (La. 1942). In their opposition to Plaintiff's motion for summary judgment, Defendants claim that "Smackco relied on SM Energy's silence and had no way of knowing that the Vermilion 281 was under insured." (Doc. No. 15, at 12.) But Defendants' own evidence does not support their conclusion. As stated above, even the most generous reading of the deposition testimony of Owens and Chapman establishes only the fact of Plaintiff's silence, not that Smackco was utterly unable to determine whether the Vermilion 281 was adequately insured. On this point, Owens' own words are illuminating:

> Q:   Do you recall looking at the insurance policy?
>
> A:   I'm not sure I've ever looked at the insurance policy. It was not made available to us.
>
> Q:   Did you ever ask for it?
>
> A:   I'm not sure that I did.
>
> Q:   You're not saying that SM Energy or [its predecessor] refused to provide the insurance policy?
>
> A:   I did not say that.

(Doc. No. 17-3, at A-70.)

Defendants' equitable estoppel defense is simply not viable on the facts presented. Defendants "had every facility for [gaining] first hand knowledge of the contents of the

[insurance policy] in this case." *Brown*, 1 La. App. at 250. The policy was on file with Plaintiff; Smackco could request and review the policy;[11] and Defendants "knew it." *Id*. They "failed to read it." *Id*. They are "not in position, therefore to plead estoppel." *Id*. Because D    efendants have not provided sufficient evidence to support a finding of misrepresentation or fraudulent concealment of material facts regarding the Vermilion 281's insurance, Defendants' final defense fails.

E.     **Although summary judgment is appropriate on the liability of Defendant Smackco, Ltd., other issues remain unresolvable on the record presently before the Court.**

As explained above, the parties' summary judgment briefing and evidence establishes that Plaintiff is entitled to summary judgment on both of its claims against Defendant Smackco, Ltd. Plaintiff also seeks recovery on its claims against Smackco's general partner, Defendant Coastal States.   It is undisputed that Smackco is an Alabama limited partnership. (Compl. ¶ 2; Doc. No. 14, at ¶ 2.) Because Smackco is organized in Alabama, the law of that state governs the "liability of partners as partners for an obligation of the limited partnership." ALA. CODE § 10A-9-1.06. Alabama law provides that a general partner in a limited partnership is "liable jointly and severally for all obligations of the limited partnership unless otherwise agreed by the claimant or provided by law." *Id*. § 10A-9-4.04(a). Defendants have raised no factual issue that would prevent the straightforward application of Alabama law governing general partner liability. In fact, Defendants do not address Coastal States's general partner liability at all in their response to Plaintiff's motion for summary judgment. Consequently, the Court finds that Plaintiff is entitled to summary judgment on both of its claims against Defendant Coastal States.

---

[11] The OOA required Plaintiff to "keep accurate books, account and records of operations which shall be available to Non-Operators or its representatives at reasonable times for its inspection and copying." (OOA § 5.5.)

It does not appear that Defendants dispute the amount of damages claimed by Plaintiff, only whether that amount is properly due and payable—a question that the Court has determined in Plaintiff's favor. (Doc. No. 17-3, at A-73 to A-74.) At this time, however, the Court will limit the grant of summary judgment against Defendants to the matter of liability.

The Court also declines to award attorney fees on the record before it. Because Plaintiff has prevailed on both of its claims against Smackco, it is entitled to attorney fees both under Louisiana statutory law, *see* LA. REV. STAT. § 9:2781(A), and under the contract, *see* OOA Ex. C, § 3(B). While Plaintiff's entitlement to attorney fees is adequately established, the amount is not. Although Plaintiff submitted an affidavit from counsel on the matter of attorney fees, the affidavit is several months out of date and presumably does not account for work performed after Plaintiff's motion for summary judgment was filed. (Doc. No. 13-15, at A-381 to A-382.) Furthermore, the issue of whether Plaintiff's recovery is limited to "reasonable" attorney fees was not addressed in the parties' briefing.[12] If any portion of Plaintiff's recovery is so limited, the reasonableness of the claimed attorney fees is a question of fact inappropriate for summary disposition. *See Duncan v. Louisiana Power & Light Co.*, 647 So.2d 665, 668 (La. Ct. App. 1994). The matter may be decided by a jury, or by the Court as fact finder.

---

[12] Louisiana statutory law regarding suit on an open account clearly limits recovery to reasonable attorney's fees. *See* LA. REV. STAT. § 9:2781(A) ("When any person fails to pay an open account within thirty days after the claimant sends written demand therefor correctly setting forth the amount owed, that person shall be liable to the claimant for reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant."). The OOA, however, does not appear to so limit the recovery. *See* OOA Ex. C § 3(B) (stating that if a non-operator does not pay its bill within 30 days of receipt, the unpaid balance shall bear interest "plus attorney's fees, court costs, and other costs in connection with the collection of unpaid amounts").

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 13) is **GRANTED** on the issue of Defendants' joint and several liability to Plaintiff for suit on an open account and breach of contract. In all other respects, the Court reserves its ruling for supplementation of the record. Defendants' Cross-Motion for Partial Summary Judgment (Doc. No. 15) is **DENIED**. Plaintiff's Motion for Partial Summary Judgment (Doc. No. 19) is **DENIED** as moot.

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 5th day of October, 2012.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE